2002 SD 89

**Jennifer JOHNSON et al., Petitioners and Residents of Candlelight Acres, Appellees,**

v.

**LENNOX SCHOOL DISTRICT NO. 41–4, Appellant.**

**No. 22194.**

Supreme Court of South Dakota.

Considered on Briefs May 28, 2002.

Decided July 24, 2002.

Debra S. Sittig of Woods, Fuller, Shultz & Smith, Sioux Falls, for appellees.

Rodney Freeman, Jr. of Churchill, Manolis, Freeman, Kludt, Shelton & Burns, Huron, for appellant.

PER CURIAM.

[¶ 1.] The Lennox School District appeals a circuit court judgment reversing its denial of a petition for a minor school district boundary change. We affirm.

FACTS

[¶ 2.] The Petitioners are residents of the Candlelight Acres residential development in southwest Sioux Falls, Lincoln County, South Dakota. Although the City of Sioux Falls has annexed Candlelight Acres so that it now lies within city limits, the area remains in the Lennox School District. The Lennox District was organized some thirty-two years ago, before the residential development in Candlelight Acres. It covers portions of Minnehaha, Lincoln and Turner counties and includes the communities of Lennox, Tea, Chancellor, Worthing and, currently, that part of southwest Sioux Falls encompassing Candlelight Acres.

[¶ 3.] At the time the boundary change petition was filed, approximately twenty-five school-aged children lived in Candlelight Acres. Of those twenty-five, approximately fifteen were attending school in the Sioux Falls School District through the open enrollment policy provided for by SDCL 13–28–40 et seq.[1] The remainder of the children were attending school at private schools in Sioux Falls or in the Lennox School District.

[¶ 4.] The Petitioners filed their boundary change petition on August 14, 2000 to transfer Candlelight Acres from the Lennox School District to the Sioux Falls School District. The petition was filed with both the Lennox and Sioux Falls School Districts and with the Lincoln and Minnehaha County Commissions. Several of the Petitioners appeared with their counsel and addressed the Lennox School Board at its regular meeting on August 14, but the Board continued the petition to its next regular meeting so that it could consult with its counsel.

[¶ 5.] On August 28, some of the Petitioners and their counsel appeared before the Sioux Falls School Board relative to the boundary change. The Sioux Falls Board voted to approve the change subject to the Petitioners' compliance with all legal requirements and subject to the approval of the change by the Lennox School Board.

[¶ 6.] The Petitioners and their counsel next appeared before the Lennox School Board on September 11. In order to obtain some updated valuation figures for the property affected by the boundary change, the petition was again continued until a special meeting held on December 4. After presentation of the case for the Petitioners and the District's response, the Board voted to deny the petition. The Board subsequently entered findings of fact and conclusions of law in accord with its decision and the Petitioners appealed to the circuit court. A hearing was held on

---

1. 1. SDCL 13–28–40 provides in pertinent part:

An enrollment options program is established to enable any South Dakota kindergarten through twelfth grade student to attend any public school that serves the student's grade level in any South Dakota school district, subject to the provisions in §§ 13–28–40 to 13–280–47, inclusive.

June 27, 2001 and the court later entered findings of fact, conclusions of law and a judgment reversing the Board's denial of the petition. The District now appeals to this Court.

ISSUE

[¶ 7.] **Was the Board's denial of the boundary change petition arbitrary, capricious or an abuse of discretion?**

██ [¶ 8.] This Court's standards of review in a school district boundary dispute are outlined in *Smith v. Canton School Dist. No. 41-1*, 1999 SD 111, ¶ 9, 599 N.W.2d 637, 639-40 (1999):

> School boards enjoy broad discretion in [decision making] and need only make sure their decisions are not arbitrary, capricious or unreasonable. *Kellogg v. Hoven Sch. Dist. No. 53-2*, 479 N.W.2d 147, 149 (S.D.1991). A decision is arbitrary and capricious when it is "not governed by any fixed rules or standard." Black's Law Dictionary 104 (6th ed. 1990).

**2.** 2. The conclusion was premised on authority holding that a decision is arbitrary and capricious when the decision-making agency: 1) relies on factors not intended to be considered; 2) fails to consider an important aspect of the problem; 3) offers an explanation for its decision that runs counter to the evidence before it; 4) renders a decision so implausible that it cannot be ascribed to a difference in view or the product of agency expertise. *See Smith*, 1999 SD 111 at ¶ 9, n. 2, 599 N.W.2d at 640 (citing *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)).

**3.** 3. Several statutory conditions must also be met to obtain a minor school district boundary change. In that regard, SDCL 13-6-84.1 provides in pertinent part:

> (1) The boundary of the area proposed to be transferred shall be coterminous at some point with the common boundary of the two school districts....

██ [¶ 9.] This Court reviews a school board decision on a boundary change petition unfettered by any presumption that the circuit court correctly decided the matter in its review. *See Smith*, 1999 SD 111 at ¶ 7, 599 N.W.2d at 639. Rather, this Court seeks to ascertain whether there is substantial evidence to support the board's decision. *See Colman–Egan School Dist. No. 50-5 v. Jones*, 520 N.W.2d 890, 892 (S.D.1994)(quoting *Oldham–Ramona School Dist. v. Ust*, 502 N.W.2d 574, 580-81 (S.D.1993)).

██ [¶ 10.] In *Smith, supra*, this Court determined a school board was arbitrary and capricious and abused its discretion in denying a boundary change petition where the record indicated the board rewrote or ignored the factors applicable to consideration of such petitions.[2] A similar case exists here.

██ [¶ 11.] Under settled law, the following factors must be considered in reviewing a boundary change petition:[3]

> (2) Children must reside within the boundary of the area to be transferred, unless it is an area change initiated by a school board as provided in § 13-6-84.2.
> SDCL 13-6-85 provides in part:
> A boundary change, affecting not more than two percent of the assessed valuation and not more than two percent of the tax-exempt acreage or other tax-exempt property to be determined at the discretion of the school district from which the area is to be taken, may be made upon an application for a boundary change to the school board of the school district from which the area is to be taken and to the school board of the school district to which the area is to be annexed, in the form of a petition signed by over fifty percent of the voters residing in the area to be transferred by the boundary change. Copies of the petitions shall also be delivered by the petitioners to the board of county commissioners having jurisdiction over the school districts affected.
> There is no dispute that these statutory conditions are met in this case. Candlelight

1. Whether the petitioners are more closely aligned to the economic, social and religious life of the community into which they are being transferred.
2. Whether there is bus service to the residence.
3. Whether the district line which places their property in the current district was drawn in an arbitrary fashion.
4. Whether petitioner's child has special needs best met in the District petitioners are attempting to join.
5. Whether the petitioners live closer to the school district they are joining as opposed to the district they are leaving.

*Smith,* 1999 SD 111 at ¶ 9, 599 N.W.2d at 640 (citing *Oelrichs School Dist. v. Sides,* 1997 SD 55, ¶ 11, 562 N.W.2d 907, 911). Each of these factors along with the Board's findings on the issue and the other applicable evidence will be reviewed in the order set forth above.

### Alignment with the Community to Which Transfer is Being Sought

■ [¶ 12.] The Board found that the Candlelight Acres area has been part of the Lennox School District for thirty-two years and that the area was not annexed by Sioux Falls until 1997. In addition, the Board found that a significant number of Lennox School District patrons commute to Sioux Falls for work and outside activities and that patrons of Sioux Falls also travel to communities in the Lennox School District for such activities. In a finding of questionable relevance, the Board also set forth that "no suburban school district stands alone in this issue" and that the Lennox School District has boundaries reaching the Canton District, the West Central and Parker Districts, the Harrisburg Districts and the Sioux Falls District.

[¶ 13.] None of the Board's findings adequately assess the factor of alignment with the community to which transfer is being sought. An important fact distinguishing this case from many boundary change cases is that the Petitioners *actually live* in the community to which they are seeking a transfer. Thus, contrary to the findings of the Board, these Petitioners are not mere commuters to Sioux Falls, but are actually Sioux Falls residents. Not only do they actually live in Sioux Falls, the record demonstrates that they are more closely related to Sioux Falls. They work, shop, conduct business, seek medical and dental care and utilize day care and babysitters in Sioux Falls. They attend church, socialize with friends and family and participate in entertainment and leisure time activities in Sioux Falls. Most of their children currently attend school in Sioux Falls at private schools or through open enrollment at the public schools. The record further shows that the Petitioners conduct little or no economic, social or religious activities in the other communities in the Lennox School District. All telephone calls in the Candlelight Acres area are local calls while calls

Acres constitutes 1.97% of the assessed value of the entire Lennox School District. Candlelight Acres is coterminous with the Sioux Falls School District with borders running adjacent to 57th Street and Sundowner Avenue. At the time of the petition, 25 school aged children resided in Candlelight Acres. The Lincoln County Auditor estimated that in August of 2000, fifty voters registered in Lincoln County lived in Candlelight Acres. Forty-seven voters registered in Lincoln County signed the petition. Other residents who had not yet registered to vote in Lincoln County also signed to show support for the petition.

to other communities in the Lennox District are long distance.

[¶ 14.] The record also reflects that the Lennox District has done little to make the Petitioners feel a part of that district. The Petitioners asserted before the Board that they were left out of various surveys concerning District issues. Sioux Falls is not listed as one of the communities in the Lennox School District in its materials or on District letterhead. A long term planning committee appointed by the Lennox School Board includes representatives from Lennox, Tea, Worthing and Chancellor, but none from Candlelight Acres.

[¶ 15.] Based upon the foregoing, the factor of alignment with the community to which transfer is being sought clearly supports the Petitioners in this case.

### Bus Service

■ [¶ 16.] The Board's only finding as to bus service provides that, "while Petitioners have expressed concern that transportation may not be provided by the Sioux Falls School District through Open Enrollment, the slight inconvenience to the parents of the children cannot outweigh the financial detriment to the district which would be caused by granting the Petition." This reflects inadequate consideration of the factor of bus service.

[¶ 17.] The record shows that the Lennox School District provides bus service to Candlelight Acres, but that children in the development who ride the bus are the first ones on in the morning and the last ones off at night. The only high school in the Lennox District is eighteen miles from the development while Sioux Falls Roosevelt High School is only four miles from the development. Other schools in the Lennox District are generally further away from Candlelight Acres than their counterparts in the Sioux Falls District. Thus, bus rides would usually be longer for students in Candlelight Acres attending school in

the Lennox District. Moreover, bus routes in the Lennox School District run through rural areas. The Petitioners raised concerns over the length of bus rides and winter road conditions as support for their petition.

[¶ 18.] The Sioux Falls School District provides bus service for its own students only. Open enrollment students are responsible for their own transportation. If the Petitioners' petition was granted, busing in the Sioux Falls District would be available to their children and the length of the bus rides would be considerably shorter than in the Lennox District. Moreover, the bus routes would run through residential areas.

[¶ 19.] As in the Lennox District, no bus service is available for extracurricular activities in Sioux Falls. However, city bus service and cab service are available in Sioux Falls and provide transportation options unavailable to the other communities in the Lennox District.

[¶ 20.] Based upon the foregoing, the factor of bus service clearly supports the Petitioners in this case.

### Arbitrariness of School District Boundaries

■ [¶ 21.] The only finding entered by the Board concerning the arbitrariness of the school district boundaries is that the Lennox School District, with Candlelight Acres as a part, has been organized for thirty-two years. Based upon this finding and the evidence supporting it, the circuit court determined that the Lennox School District boundaries were not arbitrarily drawn.

[¶ 22.] While the circuit court's determination is accurate in a historical context, it ignores the current reality that Sioux Falls has grown into the Lennox School District and has constructed schools that are generally closer to Candlelight Acres

than those in the Lennox District. If school district boundaries should bear some reasonable proximity to the patrons the district is intended to serve, then a question arises as to whether time and development have rendered the boundaries between the Sioux Falls District and the Lennox District arbitrary and unreasonable. Clearly that is the indication where the majority of the students in the area in question attend schools in Sioux Falls rather than in the Lennox District. Thus, however reasonable the Lennox School District boundaries might have been thirty-two years ago when they were drawn, it would seem to be of little import in evaluating the Petitioners' current boundary change petition in light of present circumstances.

### Special Needs of the Children

█ [¶ 23.] The Board's findings fail to reflect any specific consideration of the special needs of the children. Yet, the record shows and the circuit court found that, at the time of the filing of the petition, one of the Petitioners had a preschool age child with special needs who could have obtained additional assistance in the Sioux Falls School District. Although the Lennox District ultimately provided for the child's needs, it was not until after the filing of the petition. Thus, this factor also weighs in favor of granting the Petitioners' petition.

### Distance to the Sioux Falls School District

█ [¶ 24.] The Board's only finding related to this factor indicates the Board has "explored the issue" of additional school sites and that its policy is to approve building "where the students are." However, the finding fails to mention any current building plans.

[¶ 25.] The record reflects that the Lennox School District operates schools in Lennox, Chancellor, Worthing and Tea.

Distances from Candlelight Acres to these locations are as follows: Lennox, eighteen miles; Chancellor, twenty-three miles; Worthing, thirteen miles; and, Tea, five miles. Distances from Candlelight Acres to the closest schools in the Sioux Falls District are as follows: John F. Kennedy Elementary School, two miles; Memorial Middle School, five miles; Roosevelt High School, four miles. Thus, as found by the circuit court, the Petitioners are located within the city limits of Sioux Falls and are closer to the schools in the Sioux Falls School District than to those in the Lennox District. This factor also favors the Petitioner's petition.

### Other Factors

█ [¶ 26.] While the Board's findings and conclusions fail to reflect adequate consideration of the foregoing factors, they also show preoccupation with economic considerations and open enrollment policies. At least six of the Board's key findings denying the Petitioners' petition make direct or indirect references to the negative economic effects on the Lennox District of granting the requested boundary change. Prior to this Court's decision in *Oldham–Ramona, supra,* this Court consistently, "criticized a school board's excessive reliance on economic factors as a basis for denial of a boundary change petition." *Oldham–Ramona,* 502 N.W.2d at 582. In that regard, this Court repeatedly recognized that, "[s]chool districts do not have a vested right to retain their existing status or territory. As creatures of the legislature they are subject to periodic change, alteration, or abolishment." *Nelson v. Deuel County Bd. of Education,* 80 S.D. 559, 563, 128 N.W.2d 554, 556 (1964) (citations omitted). *Accord McLaughlin School Dist. 15–2 v. Kosters,* 441 N.W.2d 682, 685 (S.D.1989); *Oldham–Ramona,* 502 N.W.2d at 582. This Court did hold in *Oldham–Ramona,* that, "economic factors, in conjunction with the other relevant factors, are a valid consider-

ation for a school board in ruling on a petition for a minor boundary change." *Oldham–Ramona,* 502 N.W.2d at 582. However, the economic factors were not the only factors considered in *Oldham–Ramona* and the other relevant factors also weighed against the petitioners in that case. *See Oldham–Ramona,* 502 N.W.2d at 582. That is not the situation here where the record fails to reflect adequate consideration of *all* relevant factors and the evidence presented on those factors overwhelmingly supports the petition.

[¶ 27.] In addition, as observed by the circuit court, the economic effects of a minor school district boundary change are largely taken into account by the statutory limitations on such a change. SDCL 13–6–85 limits a "minor" boundary change to property affecting not more than two percent of the assessed valuation of a district. Here, the Board's own findings concede that the assessed valuation of Candlelight Acres is only 1.97 percent of the total assessed valuation of the Lennox School District. Thus, however dire the Board's findings as to the economic impact of the requested boundary change, it must be remembered that over ninety-eight percent of the assessed valuation of the District remains intact after the change. Moreover, as observed by the circuit court, this is in an area of growth in the State where populations are projected to continue increasing and property values will necessarily continue to rise. Thus, the Board was clearly over-reliant on economic factors as a basis for denying the boundary change.

[¶ 28.] The Board's findings also reflect over-reliance on open enrollment in the Sioux Falls School District as a cure-all for all of the concerns raised by the Petitioners. As was also observed by the circuit court, if open enrollment were a panacea for all such concerns, the legislature would have repealed the boundary change statutes when it passed the open enrollment law. It did not do so. Therefore, the boundary change statutes must not be read in a manner that renders them useless or meaningless. *See Yankton Ethanol, Inc. v. Vironment, Inc.,* 1999 SD 42, ¶ 15, 592 N.W.2d 596, 599 (there is a presumption against a construction which renders a statute ineffective or meaningless).

[¶ 29.] The Petitioners presented a persuasive case as to why open enrollment in the Sioux Falls School District would not resolve their concerns. In addition to the lack of bus service for open enrollment students, the Petitioners established that open enrollment would not guarantee assignment to the closest neighborhood school or to a particular school in successive years and would not guarantee that children from the same family would be assigned to the same school. As determined by the circuit court, these conditions defeat the very certainty the Petitioners were hoping to achieve with their boundary change petition.

[¶ 30.] Based upon the foregoing, it is clear that the Board's decision relies on factors not intended to be considered, fails to consider important aspects of the problem, is counter to the evidence and is so implausible that it cannot be ascribed to a difference in view or to the product of Board expertise. This renders the decision arbitrary and capricious, warranting reversal. *See Smith,* 1999 SD 111, ¶ 9, n2, 599 N.W.2d at 640. Accordingly, the circuit court committed no err in reversing it.

[¶ 31.] Affirmed.

[¶ 32.] GILBERTSON, Chief Justice, and AMUNDSON, KONENKAMP and ZINTER, Justices, participating.

[¶ 33.] SABERS, Justice, disqualified.